**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jonathan Marshall, et al., | No. CV-15-02082-PHX-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| La Mesa Rehabilitation and Care Center, et al., | |
| Defendants. | |

Plaintiff John Marshall, individually and on behalf of decedent Melissa Marshall, brings a medical negligence and wrongful death action against Defendants La Mesa Rehabilitation and Care Center and Five Star Senior Living.[1] At issue is Defendants' motion for summary judgment on Plaintiff's punitive damages claim (Doc. 86), which is fully briefed. For the following reasons, the Court grants Defendants' motion.[2]

**I. Legal Standard**

Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable

---

[1] Plaintiff also brought this action on behalf of Nicholas Marshall and Ruth Juantilla, but the parties later stipulated to the dismissal of these plaintiffs. (Doc. 99.)

[2] Defendants' request for oral argument is denied because oral argument will not help the Court resolve the pending motion. Fed. R. Civ. P. 78(b); LRCiv 7.2(f).

jury could find for the nonmoving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323. The burden then shifts to the non-movant to establish the existence of a genuine and material factual dispute. *Id*. at 324.

Additionally, this District's Local Rules of Practice impose specific requirements on the form and content of summary judgment motions. "Any party filing a motion for summary judgment must file a statement, separate from the motion and memorandum of law, setting forth each material fact on which the party relies in support of the motion." LRCiv 56.1(a). Each of these facts "must refer to a specific admissible portion of the record where the fact finds support (for example, affidavit, deposition, discovery response, etc.)." *Id.* Likewise:

> Any party opposing a motion for summary judgment must file a statement, separate from that party's memorandum of law, setting forth:
>
> (1) for each paragraph of the moving party's separate statement of facts, a correspondingly numbered paragraph indicating whether the party disputes the statement of fact set forth in that paragraph and a reference to the specific admissible portion of the record supporting the party's position if the fact is disputed; and
>
> (2) any additional facts that establish a genuine issue of material fact or otherwise preclude judgment in favor of the moving party. Each additional fact must be set forth in a separately numbered paragraph and must refer to a specific admissible portion of the record where the fact finds support.

LRCiv 56.1(b). The court may deem a movant's separate statement of facts to be true if the nonmoving party does not comply with these rules. *See Szaley v. Pima Cty.*, 371 Fed. App'x 734, 735 (9th Cir. 2010).

**II. Factual Background**

Preliminarily, Defendants submitted a separate statement of facts setting forth each fact upon which they rely in their memorandum of law, along with corresponding citations to evidence in the record supporting those factual assertions. (Doc. 87.) In violation of LRCiv 56.1(b), however, Plaintiff did not submit a separate statement of correspondingly numbered paragraphs indicating whether he disputes or admits the facts asserted by Defendants, along with additional facts that he believes preclude summary judgment. Because Plaintiff failed to submit a separate statement of facts, his memorandum of law fails to "include citations to the specific paragraph in the statement of facts that supports assertions made in the memorand[um]." LRCiv. 56.1(e). The Court therefore may deem Defendants' separate statement of facts to be undisputed for purposes of this order.[3] *Szaley.*, 371 Fed. App'x at 735.

Nevertheless, Defendants' motion is not premised on the Court adopting their version of the facts as undisputed. Defendants concede that there are genuine factual disputes touching on the merits of Plaintiff's negligence and wrongful death claims. They contend, however, that summary judgment may be entered on Plaintiff's request for punitive damages because such damages are not available even under Plaintiff's view of the facts. With that in mind, the following is the factual background material to resolution of this motion.

Melissa Marshall ("Marshall") was admitted as a patient at La Mesa Rehabilitation and Care Center ("La Mesa" or "the facility") on August 23, 2013. Upon admission,

---

[3] Plaintiff's response memorandum also violates LRCiv 7.1(b) by presenting footnotes in a font size smaller than 13 point. Defendants' submissions are not without flaws, either. Of note, a number of Defendants' separate statements of "fact" contain impermissible *argument* over the materiality of positions Defendants anticipate Plaintiff will take. (*See, e.g.*, Doc. 87 ¶ 12.) The parties are encouraged to review this District's Local Rules of Practice to ensure that future filings comply.

- 3 -

Marshall underwent an evaluation to assess her status as an elopement risk. Given Marshall's dementia and her history of exit seeking behavior, she was characterized as at risk. As a result, Marshall was fitted with a WanderGuard, a device which signals an alarm when the patient wearing it tries to exit the facility.

La Mesa's staff conducted periodic elopement assessments of Marshall, regularly characterizing her status as at risk. Plaintiff contends that in August 2014 Marshall's risk status improperly was downgraded. (Doc. 91 at 7, 8.) Nevertheless, the staff continued to have Marshall wear her WanderGuard device, regularly checked the WanderGuard to ensure that it was properly functioning, and stationed a staff member near the front door during regular business hours.

On October 23, 2014, Marshall eloped from the facility, exiting from the front entrance unnoticed by La Mesa's staff. Marshall subsequently fell in the parking lot adjacent to the facility. Based on La Mesa's internal investigation, it was determined that Marshall exited the facility when a vendor, utilizing a metal dolly, held the front door open for her. La Mesa determined that the metal dolly interfered with the signal emitted by the WanderGuard sensors attached to the door, preventing the alarm from sounding when Marshall exited the building. As part of the internal investigation, La Mesa staff also tested Marshall's WanderGuard device and found it functioning properly. Plaintiff contends, however, that Marshall's sock covered her WanderGuard, obstructing the sensor and contributing to its failure to trigger the alarm. (Doc. 91 at 7, 9.) Plaintiff also questions whether a La Mesa staff member was at the front desk at the precise moment she escaped.

After Marshall's fall, she was taken to Yuma Regional Medical Center. Although a CT scan of her brain was clear, an MRI showed bilateral subdural hematomas. As a result of her scans and decline in her mental status, Marshall was intubated and transferred to St. Joseph's Hospital in Phoenix for neurological intervention. Marshall remained at St. Joseph's from October 25, 2014 until November 4, 2014, with no improvement. Upon discharge, it was noted that Marshall "had never awoken from her

deep encephalopathy secondary to sepsis and underlying brain disease, compounded by the right subdural hematoma." Marshall was transported from St. Joseph's to hospice, and died the following day.

**III. Discussion**

"In Arizona, punitive damages are awarded only in the most egregious of cases, where it is proved by clear and convincing evidence that the defendant engaged in reprehensible conduct and acted with an evil mind." *Sec. Title Agency, Inc. v. Pope*, 200 P.3d 977, 995 (Ariz. Ct. App. 2008) (quotations, citations, and alterations omitted). "A defendant acts with the requisite evil mind when he intends to injure or defraud, or deliberately interferes with the rights of others, consciously disregarding the unjustifiable substantial risk of significant harm to them." *Hyatt Regency Phx. Hotel Co. v. Winston & Strawn*, 907 P.2d 506, 518 (Ariz. Ct. App. 1995) (quotations and citations omitted). Though a plaintiff may prove the requisite evil mind through circumstantial evidence, "a jury will not be permitted to consider an award of punitive damages if the evidence supporting such an award is only slight or inconclusive." *White v. Mitchell*, 759 P.2d 1327, 1333 (Ariz. Ct. App. 1988).

Here, there is no evidence that Defendants intended to injure Marshall, and Plaintiff does not argue otherwise. Instead, Plaintiff argues that punitive damages are recoverable because Defendants consciously disregarded a substantial and unjustifiable risk that Marshall would escape and injure herself. Given Marshall's dementia and history of exit seeking behavior, a jury reasonably could find that Defendants were aware of such a risk. But even under the most favorable reading of the evidence, a jury could not reasonably conclude that Defendants consciously disregarded that risk.

To the contrary, undisputed evidence shows that Defendants responded to this risk by implementing a number of measures designed to reduce the likelihood that Marshall would escape. For example, Defendants conducted an initial assessment of Marshall's elopement risk, determined the reasons for her exit seeking behavior, adopted a care plan to reduce the risk of elopement, fitted Marshall with WanderGuard, regularly checked the

device's functionality, conducted periodic risk assessments to update her risk level, and stationed a staff member at the front desk during regular business hours. Given this evidence, no reasonable jury could find that Defendants consciously disregarded the risk that Marshall would escape. (Docs. 87 at 5; 87-1 at 9-13, 16, 63, 65-66, 70-82, 84-88, 104-105; 91 at 7-9.)

Plaintiff argues, among other things, that Defendants improperly downgraded Marshall's risk level and that they failed to take additional measures, like training non-nursing staff on elopement. (Doc. 91 at 8, 10.) Though a jury could find that Defendants' actions were inadequate and that they were negligent in not implementing more effective measures, punitive damages may not be awarded "based on gross negligence or mere reckless disregard of the circumstances." *Volz v. Coleman Co., Inc.*, 748 P.2d 1191, 1194 (Ariz. 1987). Instead, the relevant inquiry is whether Defendants' actions (or lack thereof) were motivated by spite, actual malice, or a "conscious and deliberate disregard of the interests and rights of others." *Gurule v. Ill. Mut. Life and Cas. Co.*, 734 P.2d 85, 87 (Ariz. 1987). That Defendants did not remove Marshall's WanderGuard or otherwise deviate from their security measures despite downgrading Marshall's elopement risk belies Plaintiff's claim that they acted with conscious and deliberated disregard.

To show otherwise, Plaintiff relies on two distinguishable cases. (Doc. 91 at 10-11.) The first, *Bickler v. Senior Lifestyle Corp.*, No. CV-09-00726-PHX-DGC, 2010 WL 2292985 (D. Ariz. June 8, 2010), involved a care facility patient who was injured when another patient with a known history of combativeness pushed her down. The court denied the facility's summary judgment motion on punitive damages, finding that there was an issue of fact as to whether the facility consciously disregarded the risks posed by the assaultive patient because it stood to benefit financially from housing him. That is, the financial incentive served as circumstantial evidence that the facility consciously disregarded the risk of harm to the plaintiff. *Id.* at *7. Likewise, the second case, *Edwards ex rel. James v. Manorcare, Inc.*, No. CV 03-018-TUC-FRZ, 2006 WL 6255440 (D. Ariz. Oct. 19, 2006), involved a care facility patient who was injured in a

fall at an understaffed facility. The plaintiff presented evidence that the facility knew it was inadequately staffed, and the court denied summary judgment on punitive damages because a reasonable jury could infer that the facility deliberately understaffed to further its financial interest. *Id.* at *3-*4. Here, in contrast, Defendants responded to Marshall's elopement risk, and no evidence has been offered that Defendants' actions or omissions were motivated by financial self-interest.

## IV. Conclusion

Defendants do not seek summary judgment on Plaintiff's tort claims. Whether Defendants were negligent in their response to Marshall's elopement risk remains a question for the jury to decide. But even under the most generous reading of the facts, no reasonable jury could conclude by clear and convincing evidence that Defendants consciously and deliberately disregarded Marshall's elopement risk. Though this might be a case of gross negligence or reckless disregard of the circumstances, it simply does not present the type of egregious conduct or evil motives for which Arizona courts have specially reserved punitive damages. For these reasons,

**IT IS ORDERED** that Defendants' motion for summary judgment (Doc. 86) is **GRANTED**.

Dated this 18th day of December, 2017.

Douglas L. Rayes
United States District Judge